EXHIBIT 1 TO JOINT MOTION

**FILED**
**APR 2 5 2003**
RALPH L. DeLOACH, Clerk
By_____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WYANDOTTE NATION,<br>a federally-recognized Indian Tribe,<br><br>Plaintiff,<br><br>vs.<br><br>UNIFIED GOVERNMENT OF<br>WYANDOTTE COUNTY/KANSAS<br>CITY, KANSAS, et al., for itself and<br>on behalf of a similarly situated class<br>of defendants,<br><br>and<br><br>INTERNATIONAL PAPER COMPANY,<br>OWENS CORNING, OWENS<br>CORNING FIBERGLASS CORP.,<br>ROBERT M. AND EMILY W. MODEER,<br>GENERAL MOTORS CORPORATION,<br>WLLIAM J. WILLHITE,<br><br>Defendants. | Case No.: 01-CV-2303CM |

## SECOND AMENDED COMPLAINT

Now comes Plaintiff Wyandotte Nation, a federally-recognized Indian tribe ("Tribe" or "Wyandotte"), by and through its undersigned counsel, and for its second amended complaint herein alleges and avers as follows:

### INTRODUCTION

1.     This is an action seeking declaratory judgment, recovery of possession of real property and monetary damages arising out of Defendants' improper taking of, and trespass upon, lands over which Plaintiff Tribe has held an interest for over 150 years, which interest was never

-1-

legally or properly extinguished or transferred. Plaintiff acquired the lands in question by Treaty ratified in 1848, and has never ceded title to such lands. Therefore, Plaintiff holds title to the lands through Treaty, and such title is superior to any title Defendants purport to hold.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1337 and 1362, insofar as the action arises under the Constitution and statutes of the United States, and under treaties between the United States and Plaintiff Tribe.

3. Venue is properly laid in this District pursuant to 28 U.S.C. § 1391(b) insofar as the subject property is located within this District.

## THE PARTIES

4. Plaintiff Wyandotte Nation is a federally-recognized Indian tribe with its primary trust land base located within the boundaries of the State of Oklahoma, but which is also the beneficial owner of land within the boundaries of the State of Kansas which the United States holds in trust for the Tribe.

5. Defendants are persons and entities, other than plaintiff, who purport to own land identified in paragraphs 18, 27 and 30 of this Second Amended Complaint, with the exception of the United States and the State of Kansas, the title to which properly rests with Plaintiff Tribe.

6. Defendant Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government") is named individually and as member and class representative of a defendants' class of all similarly situated persons and entities, other than plaintiff who purport to own land identified in paragraphs 27 and 30 of this Second Amended Complaint, excluding the United States, the State of Kansas, and the following defendants who have appeared in this case and desire to be excluded from the class and to represent their own interests: Robert M. and

Emily W. Modeer, Cordell, Jr. and Mary Meeks, Brotherhood Bank Controller, Cellastine Meeks, Marcena and Luther Chandler, Marlene Shelby, Sunshine Building Co., Leonard J. Pavlicek, Panel Systems Plus, Inc., Paul E. Fowler Trust, International Paper Company, General Motors Corporation, and Union Pacific Railroad Company, for itself and as successor-in-interest to Missouri Pacific Railroad Company; and excluding original defendant(s) Owens Corning entities, as to which there is a stay in bankruptcy. Certification of a defendants' class as so defined is appropriate under Fed. R. Civ. P. 23(a) and (b)(1)(B) and (b)(2) as to plaintiff's claims for declaratory relief alleged herein, and is appropriate under Fed R. Civ. P. 23(a) and (b)(3) as to plaintiff's claims for monetary damages alleged herein. All other requirements for maintenance of a defendants' class action in these particulars are hereby alleged to be satisfied. The individual defendants and the defendants' class are collectively referred to as "defendants" herein.

## FACTS-THE TRIBE AND PROPERTY

7.  The Tribe's original reservation lands were located in what is now Ohio and Michigan, and totaled in excess of 600,000 acres.

8.  The Tribe entered into a series of treaties with the United States between 1789 and 1836 pursuant to which the Tribe ceded in excess of 500,000 acres of its Ohio and Michigan reservation land to the United States, and after 1836 114,000 acres of reservation land remained in Ohio and/or Michigan.

9.  In 1842, the Tribe and the United States entered into the Treaty of Upper Sandusky, pursuant to which the Tribe ceded to the United States the remaining 114,000 acres of reservation land in Ohio and Michigan.

10. The Treaty of Upper Sandusky provided that, in exchange for the ceding of the remaining lands in Ohio and Michigan, the Tribe was to receive a 148,000 acre reservation in what was then the Kansas Territory.

11. In reliance upon the Treaty of Upper Sandusky, the Tribe relocated to the Kansas Territory, but the United States failed to provide the promised reservation land, then proffered alternative lands which were rejected by the Tribe as being too remote from civilization.

12. In 1843, the Tribe entered into an agreement with the Delaware Tribe ("Delaware") whereby the Tribe purchased from the Delaware 36 sections of land, approximately 23,000 acres, at the confluence of, and between, the Kansas and Missouri rivers, for the cost of $46,080.

13. Additionally, the agreement between the Delaware and the Wyandotte provided that the Delaware, in consideration and appreciation for generosity shown by the Wyandotte to the Delaware when both Tribes were located in Ohio in the early 1800s, would give the Wyandotte three additional sections, approximately 1920 acres (the "Gifted Sections"), making the total conveyance 39 sections.

14. The 39 sections are referred to as the "Wyandot Reserve."

15. Congress ratified the conveyance of 39 sections from the Delaware to the Wyandotte on or about July 25, 1848, and acknowledged that the Wyandotte had received land both by purchase and by gift.

16. The United States, in a Treaty entered into in 1850, acknowledged its breach of the Treaty of Upper Sandusky in failing to provide the promised 148,000 acre reservation, and paid the Tribe $185,000 in return for the Tribe's release of any and all claims arising out of the United States' failure to provide the reservation land. In doing so, the United States again

acknowledged that the conveyance from the Delaware to the Wyandotte included both purchased and gifted land.

17. In 1855, the United States and the Tribe entered into a subsequent treaty (the "Treaty of 1855").

18. The Treaty of 1855 provided that the Tribe would cede to the United States those lands which had been purchased by the Wyandotte from the Delaware, with the exception of four identified parcels – (a) the Methodist Episcopal Church, (b) the Methodist Episcopal Church South, (c) four acres adjoining the Wyandotte Ferry on the Kansas River, and (d) a portion of land "now enclosed and used as a public burying ground" was expressly excepted from the cessation, and would "be permanently reserved and appropriated for that purpose" ((d) hereinafter the "Huron Cemetery Property").

19. The Treaty of 1855 did not cede to the United States the Gifted Sections, and was in fact silent as to those 3 sections.

## FACTS – CURRENT STATUS OF DISPUTED PROPERTY

20. The Huron Cemetery Property remains owned in trust by the United States for the benefit of the Plaintiff Tribe.

21. As presently situated, the Huron Cemetery Property encompasses not only the present cemetery itself, but also a portion of Seventh Street, and a portion of Minnesota Avenue.

22. The only encumbrances of record on the Huron Cemetery Property are two rights of way, one in favor of the Urban Renewal Agency for improvement and restoration of the cemetery, the other in favor of the Unified Government of Wyandotte County/Kansas City, Kansas for maintenance of the cemetery.

23. By their terms, the right of way to the Urban Renewal Agency expires upon completion of the restoration project, and the right of way to the Unified Government of Wyandotte County/Kansas City, Kansas expired on or about February 13, 1976.

24. No easement, license, right-of-way or other encumbrance has ever been placed upon the Huron Cemetery Property with respect to the development of commercial parcels on the west side of the Property, or the use of Huron Cemetery Property for retaining walls or venting systems appurtenant to such commercial parcels.

25. No easement, license, right-of-way or other encumbrance has ever been placed upon the Huron Cemetery Property with respect to the use of Minnesota Avenue as a public thoroughfare over the northern portion of the Property.

26. No easement, license, right-of-way or other encumbrance has ever been placed upon the Huron Cemetery Property with respect to the use of Seventh Street as a public thoroughfare over the western portion of the Property.

27. The Gifted Sections encompass what are now known as Sections 27-10-25, 34-10-25 and 3-11-25 on the official tax maps of Wyandotte County.

28. The Gifted Sections have never been legally and effectively transferred from the Plaintiff Tribe to any other party, including, without limitation, to the United States.

29. Due to alterations over time in the watercourse of the Missouri River, lands which were a part of the Missouri River in 1855 have in the interim, through accretion or reliction, become dry lands (the "Accreted Lands").

30. The Accreted Lands now encompass the easternmost portion of the Gifted Sections, as well as three later established Sections, denoted 26-10-25, 35-10-25 and 2-11-25.

31. Subsequent to the Treaty of 1855, the United States purported to grant patents to the lands within the Gifted Sections.

32. Following the granting of the patents, upon formation of the Accreted Lands and pursuant to Kansas law, title to parcels within the Accreted Lands was granted to the patents holders, or the successors thereto, of the parcels with the Gifted Sections contiguous to such Accreted Land parcels.

33. Because the Wyandotte never ceded or otherwise conveyed or relinquished title to the Gifted Sections, the granting of the patents by the United States, subsequent transfers from the patent grantees, and the granting of title to the Accreted Lands based on the patent-holders and successors are all invalid.

34. Plaintiff Tribe holds, and has held since no later than 1848, good and marketable title to the Gifted Sections and holds, and has held since their creation, good and marketable title to the Accreted Lands.

## COUNT I – TRESPASS AS TO HURON CEMETERY

35. Plaintiff hereby incorporates the foregoing paragraphs 1-34 of this Complaint as if fully set forth herein.

36. The occupation and use of portions of the Huron Cemetery Property by the commercial properties fronting Seventh Street is without right, permission or license granted by Plaintiff, the beneficial owner of such property, and therefore constitutes a trespass upon such property.

37. The occupation and use of portions of the Huron Cemetery Property which extend into what is now Seventh Street and Minnesota Avenue is without right, permission or license

granted by Plaintiff, the beneficial owner of such property, and therefore constitutes a trespass upon such property.

38. As a result of such trespasses, Plaintiff has suffered injury in the form of loss of use of said property and lack of compensation for the use of said property.

## COUNT II – TRESPASS AS TO THE GIFTED SECTIONS AND ACCRETED LANDS

39. Plaintiff hereby incorporates the foregoing paragraphs 1-38 of this Complaint as if fully set forth herein.

40. Defendants, and each of them, are the record owners of, *inter alia*, the parcels of land as shown on the list attached hereto, which parcels are, in whole or in part, within the Gifted Sections and/or Accreted Lands, are occupying and using said parcels without right, permission or license granted by Plaintiff, and therefore are trespassing upon such property.

41. As a result of such trespasses, Plaintiff has suffered injury in the form of loss of use of said properties and lack of compensation for the use of said properties.

## COUNT III – DECLARATORY JUDGMENT

42. A live, ripe and justiciable controversy exists between the Plaintiff and Defendants regarding the right to ownership, possession and title to the encroachments onto the Huron Cemetery Property, the Gifted Sections and the Accreted Lands (collectively hereinafter the "Disputed Property").

43. The United States and Plaintiffs have not entered into any Treaty, nor has Congress passed any express and unambiguous law nor enacted any express and unambiguous statute, extinguishing Plaintiff's ownership of the Disputed Property as established in the transaction from the Delaware Tribe, and ratified by the United States Senate in 1848.

44. As a result, the Disputed Property constitutes Tribal Lands for which Plaintiff holds valid Treaty title.

45. Notwithstanding Plaintiff's title thereto, third parties have purported to transfer to other third parties interests in the Disputed Property, such that Plaintiff is not the record owner of any of the Disputed Property, creating record title which is inferior to that of Plaintiff.

46. This controversy has caused, and will continue to cause, uncertainty regarding the right to ownership, possession and title to the Disputed Property, and regarding the benefits which may derive from such ownership, possession and title including, but not limited to, the right to sell or otherwise transfer such rights.

47. Insofar as Plaintiff has been denied ownership, possession and title, and the benefits deriving therefrom, as to the Disputed Property, Plaintiff has, and will continue to, suffer concrete and particularized injuries.

48. Entry of Declaratory Judgment in favor of Plaintiff would clarify the right to ownership, possession and title to the Disputed Property and afford relief from the injuries currently being suffered by Plaintiff as a result of the uncertainty described herein.

49. The public interest favors clarity and certainty of the ownership of real property in general, and of lands owned by Indian Tribes through Treaties with the United States in particular.

50. Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a declaration that Plaintiff holds valid, superior title to the Disputed Property, and that Plaintiff should be returned to ownership, possession and title of such property.

## COUNT IV - DAMAGES

51. Plaintiff hereby incorporates the foregoing paragraphs 1- 50 of this Complaint as if fully set forth herein.

52. The continuing trespass by Defendants over the Disputed Property has caused actual damage to Plaintiff in the form of lost use, rents, issues, income and profits.

53. Plaintiff is entitled to such monetary damages as may be proved at the trial in compensation for such trespass.

WHEREFORE, having fully set forth the allegations against the Defendants herein, for its First Amended Complaint herein, Plaintiff Wyandotte Nation prays for relief as follows:

A. As to Counts I and II, an Order preventing Defendants from further trespass onto the Disputed Property;

B. As to Count III, a Declaration that Plaintiff holds valid, superior title to the Disputed Property, and that Plaintiff should be returned to ownership, possession and title of such property;

C. As to Count IV, monetary damages in an amount to be determined at trial, plus interest as allowed by law; and

D. Such other relief as the Court may find just and equitable including, without limitation, the award of Plaintiff's fees and expenses, including reasonable attorneys' fees, from Defendants.

        Respectfully submitted,

        David McCullough
        MICHAEL MINNIS & ASSOCIATES
        100 N. Broadway
        Oklahoma City, Oklahoma 73102
        (405) 235-7686

        John J. Gruttadaurio, (Ohio No. 0042083)

FILZER & GRUTTADAURIO
1414 South Green Road, Suite 101
South Euclid, Ohio 44121
(216) 381-4810
(216) 381-7280 (fax)

HOLMAN HANSEN COLVILLE & COATES, P.C.

By_____
Sam L. Colville, KS #18490
Robert W. Pohl
10740 Nall Avenue, Suite 200
Overland Park, Kansas 66211
(913) 648-7272
(913) 383-9596 (fax)

Attorneys for Plaintiff